USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/28/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :          **OPINION**

          - against -            :          10 Civ. 2567 (DC)
                                             04 Cr. 752 (DC)
RICHARD PETERSON,                 :

          Defendant.             :

- - - - - - - - - - - - - - - - - -x

APPEARANCES:          PREET BHARARA, ESQ.
                     United States Attorney for the
                     Southern District of New York
                          By:  Daniel W. Levy, Esq.
                               Assistant United States Attorney
                     One Saint Andrew's Plaza
                     New York, New York  10007

                     RICHARD PETERSON
                     Defendant Pro Se
                     96499-011
                     F.C.I.-Terminal Island
                     P.O. Box 3007
                     Terminal Island, California  90731

**CHIN, Circuit Judge**

          On July 19, 2005, defendant Richard Peterson pled

guilty to wire fraud and engaging in the business of insurance

after having been convicted of a felony involving a breach of

trust.  On February 28, 2007, I sentenced him principally to 120

months' imprisonment.  Proceeding pro se, Peterson now moves

pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his

sentence on the basis of ineffective assistance of counsel.[1]  He also seeks to be resentenced in light of an amendment to the U.S. Sentencing Guidelines Manual.  For the reasons that follow, the motion is denied.

**BACKGROUND**

**A.   The Facts**

From approximately 2000 through 2003, Peterson, under the alias "Robert James," perpetrated a scheme to defraud by holding himself out as an insurance broker working with an insurance brokerage company, United Restaurant Services ("URS"). (PSR at 6).[2]  Peterson's license to engage in the insurance

---

[1]    Because Peterson is proceeding pro se, I have accorded his motion the liberal construction intended for pro se litigants.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1983).

[2]    References are as follows: "Ind't" for the grand jury indictment of Peterson issued on July 28, 2004; "Plea Agmt." for the plea agreement, dated July 19, 2005; "Plea Tr." for the transcript of Peterson's plea allocution on July 19, 2005; "PSR" for the Presentence Investigation Report, dated December 8, 2005; "6/30/2006 Tr." for the transcript of the hearing on June 30, 2006; "Gov't Sen. Mem." for the government's sentencing memorandum, dated August 18, 2006; "Pet. Sen. Mem." for Peterson's sentencing memorandum, dated September 27, 2006; "Stip." for Peterson's post-plea sentencing stipulation, dated November 30, 2006; "Gov't 12/11/2006 Ltr." for the government's letter to the Court, dated December 11, 2006; "Pet. Supp. Sen. Mem." for Peterson's supplemental sentencing memorandum, dated January 23, 2007; "Sen. Tr." for the transcript of Peterson's sentencing on February 28, 2007; "Pet. Mot." for Peterson's

business in California had been revoked in May 1999.  (Id. at 5).
In November 2001, Peterson was convicted of bankruptcy fraud, a
criminal felony involving dishonesty and a breach of trust.  (Id.
at 11; Ind't ¶ 16).  Nevertheless, even after his license was
revoked and he was convicted of a felony, Peterson continued to
induce various entities -- typically restaurants and bars -- to
purchase fraudulently issued commercial liability insurance
policies through URS.  (PSR at 6).

          The policies purportedly were placed with underwriters
at Lloyd's of London ("Lloyd's"), but in fact Peterson did not
have authorization from Lloyd's to accept insurance policies on
its behalf.  (Id.).  In addition, he collected premium payments
for the policies and used the funds for personal expenses instead
of holding the premiums in trust for Lloyd's.  (Id.).

          On July 28, 2004, Peterson was charged with one count
of wire fraud, in violation of 18 U.S.C. § 1343, one count of

----

§ 2255 motion, dated February 16, 2010; "Pet. Decl." for
Peterson's declaration in support of his § 2255 motion, dated
February 24, 2010; "Gov't Opp." for the government's response to
Peterson's § 2255 motion, dated October 8, 2010; "Pet. Reply" for
Peterson's reply in support of his § 2255 motion, dated February
9, 2011; "Pet. Second Mot." for Peterson's second § 2255 motion,
dated May 31, 2012; "Pet. Supp." for Peterson's supplemental
pleading in support of his § 2255 motions, dated June 13, 2012;
and "Garton Decl." for the declaration of Leisa Garton, dated
March 4, 2010.

engaging in the insurance business after being convicted of a felony involving dishonesty or breach of trust, in violation of 18 U.S.C. § 1033(e)(1)(A), and one count of money laundering, in violation of 18 U.S.C. § 1956(a)(2)(B)(i).  (Ind't  14, 16, 18).

**B.   Prior Proceedings**

   **1.   Guilty Plea and Sentencing**

        On July 19, 2005, Peterson pled guilty, pursuant to a plea agreement, to one count of wire fraud and one count of engaging in the business of insurance after having been convicted of a felony involving a breach of trust.  (Plea Tr. at 23-32). The plea agreement provided that in return for Peterson's guilty plea to counts one and two of the indictment, the government would move to dismiss any open counts against Peterson at his sentencing.  (Plea Agmt. at 2).  The plea agreement did not contain any Sentencing Guidelines calculations.

        On December 5, 2006, nearly 17 months after Peterson pled guilty, the parties entered into a post-plea sentencing stipulation ("Sentencing Stipulation") in which they stipulated to the loss amount and agreed that the Guidelines range was 46 to 121 months' imprisonment.  (Stip. at 2-3).  The parties reserved

the right to litigate the applicability of a victim enhancement

and the calculation of Peterson's Criminal History Category, but

agreed that those issues could be decided on papers without the

need for a hearing pursuant to United States v. Fatico, 579 F.2d

707 (2d Cir. 1978).  (Id. at 2-3; Gov't 12/11/2006 Ltr.).  The

Sentencing Stipulation also contained the following waiver of

Peterson's right to challenge his sentence:

> It is agreed (i) that the defendant will not
> file a direct appeal, nor litigate under
> Title 28, United States Code, Section 2255
> and/or Section 2241, any sentence within or
> below the Stipulated Guidelines Range set
> forth above and (ii) that the Government will
> not appeal any sentence within or above the
> Stipulated Guidelines Range.  It is further
> agreed that any sentence within the
> Stipulated Guidelines range is reasonable.

(Stip. at 5).

On February 28, 2007, before proceeding with

sentencing, I questioned Peterson regarding the Sentencing

Stipulation to ensure that he understood what he was doing.

Peterson specifically acknowledged during the colloquy that he

was waiving his right to challenge a Guidelines sentence:

> THE COURT:  In addition, in the agreement you
> waived, or gave up, your right to appeal or
> otherwise try to challenge any sentence
> within the stipulated range of 46 to 121
> months.  Do you understand that?

            THE DEFENDANT:  Yes.

            THE COURT:  In other words, if I sentence you
            to 121 months or anything less than that, you
            would have no right to appeal or otherwise
            try to challenge the sentence.  Understood?

            THE DEFENDANT:  Yes.

(Sen. Tr. 5).

        After hearing argument on the two outstanding issues, I

applied a six-level victim enhancement pursuant to U.S.S.G.

§ 2B1.1(b)(2) and concluded that Peterson's total adjusted

offense level was 28 and his Criminal History Category was III.

(Id. at 44).  I sentenced Peterson principally to 120 months'

imprisonment, which was within the Guidelines range of 97 to 121

months.  (Id.).

    2.  **Appeal**

        Peterson appealed his conviction on two grounds.  See

United States v. Peterson, 288 F. App'x 727 (2d Cir. 2008)

(summary order).  First, he argued that the record lacked an

adequate factual basis for both counts of conviction.  Id. at

728.  Second, he argued that he did not enter into the guilty

plea knowingly and voluntarily because he did not know he was

waiving his right to challenge venue on appeal.  Id. at 729.  The

-6-

Second Circuit affirmed Peterson's conviction on July 25, 2008. Id.[3] He filed a petition for rehearing, which the Second Circuit denied on November 20, 2008. (Gov't Opp. at 12). Peterson did not file a petition for a writ of certiorari to the United States Supreme Court. (Pet. Mot. at 3).

### 3.  **The Instant Motion**

On February 16, 2010, Peterson filed the instant motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the ground that he was denied effective assistance of counsel.[4] (Pet. Mot.). The government filed its response on October 8, 2010, and Peterson submitted a reply on February 9, 2011. (Gov't Opp.; Pet. Reply). In his reply, Peterson also sought to be resentenced in light of a recent amendment to the U.S. Sentencing Guidelines Manual. (Pet. Reply at 16-21).

---

[3]   Although I originally sentenced Peterson to concurrent terms of 120 months' imprisonment on each of counts one and two, the Second Circuit modified Peterson's sentence on count two to 60 months, which is the statutory maximum for a violation of 18 U.S.C. § 1033(e)(1)(A). See United States v. Peterson, 288 F. App'x 727, 729 (2d Cir. 2008) (summary order).

[4]   On July 29, 2010, I denied the motion as untimely. (Memorandum Decision, dated July 29, 2010). After further clarification from the government, however, on August 9, 2010, I concluded that the petition was timely, vacated the July 29 decision, and ordered the government to respond to Peterson's motion. (Order, dated Aug. 9, 2010).

-7-

On May 31, 2012, Peterson submitted another § 2255 motion, asserting a new basis for his counsel's alleged ineffectiveness.  (Pet. Second Mot.).  On June 13, 2012, Peterson submitted a supplemental pleading largely reiterating his prior arguments.  (Pet. Supp.).[5]

## DISCUSSION

Peterson's motion is denied.  First, Peterson waived his right to collaterally attack his conviction and sentence. Second, even assuming that Peterson is not precluded from making this challenge, the motion fails on the merits.

## A.   Waiver

### 1.   Applicable Law

The Second Circuit has repeatedly upheld the validity of appeal waivers that are "'knowingly, voluntarily, and

---

[5]     For purposes of the instant decision, I assume that Peterson's 2012 submissions relate back to his original motion to vacate, set aside, or correct his sentence.  See Fed. R. Civ. P. 15(c)(1)(B); Martin v. United States, 834 F. Supp. 2d 115, 123 (E.D.N.Y. 2011) (claim raised for first time in amended § 2255 motion filed outside limitations period must "relate back" to initial motion to be timely under Fed. R. Civ. P. 15).  Further, because "it plainly appears from the face of the motion . . . and the prior proceedings in the case that [Peterson] is not entitled to relief," I did not order the United States Attorney to file an answer to Peterson's latest submissions.  See Rules Governing Section 2255 Proceedings for the United States District Courts 4(b); Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000).

competently provided by the defendant.'" United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011) (quoting United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000)).  Thus, by agreeing to do so in a plea or sentencing agreement, a defendant may waive his right to appeal a sentence within an agreed Guidelines range.  Id. at 146-48; see also United States v. Stevens, 66 F.3d 431, 437 (2d Cir. 1995) (sentencing agreements and plea agreements are analogous for purposes of determining the enforceability of a waiver of the right to appeal).  Waivers of the right to collaterally attack a sentence are also enforceable under the same conditions as waivers of the right to directly appeal.  See, e.g., Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001).

Notwithstanding such waivers, a petitioner may challenge the "constitutionality of the process by which he waived those rights." United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001) (per curiam).  For example, waivers secured without the effective assistance of counsel may be unenforceable. See id. at 114 (explaining that "'the very product of the alleged ineffectiveness' cannot fairly be used to bar a claim of ineffective assistance of counsel" (citation omitted)).

2.   **Application**

Peterson's motion is denied because he waived his right
to collaterally attack his sentence under 28 U.S.C. § 2255.
According to the unambiguous terms of Peterson's Sentencing
Stipulation, he agreed not to appeal or collaterally attack any
sentence within or below the stipulated Guidelines range of 46 to
121 months' imprisonment.  (See Stip. at 5).  Prior to
sentencing, Peterson stated during a thorough allocution that he
had (i) read the Sentencing Stipulation; (ii) discussed the
Stipulation with his attorney; and (iii) understood the
Stipulation before he signed it.  (Sen. Tr. 4).  Further,
Peterson specifically confirmed that he understood he was waiving
his right to appeal or to otherwise challenge his sentence, as
long as his sentence fell within or below the range set forth in
the Sentencing Stipulation.  (Id.).  I sentenced him to 120
months' imprisonment, within the stipulated range.  (Id. at 44).
Because the record establishes that Peterson's waiver was
knowing, voluntary, and competent, he may not collaterally attack
his sentence via the instant motion.  Accordingly, the motion is
denied on this basis.

-10-

Moreover, even assuming that Peterson did not waive his right to bring this motion, it would fail on the merits for the reasons set forth below.

**B.   The Merits**

Peterson argues that he was deprived of effective assistance of counsel on several grounds.  He also seeks to be resentenced in light of a recent amendment to the U.S. Sentencing Guidelines Manual.

**1.   Ineffective Assistance of Counsel**

**a.   Applicable Law**

To demonstrate ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  First, the petitioner must show that his counsel's performance "fell below an objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  The court's review "must be highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  A petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

Id. (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955)); <u>see also</u> <u>United States v. Berkovich</u>, 168 F.3d 64, 67 (2d Cir. 1999) ("Actions or omissions that 'might be considered sound trial strategy' do not constitute ineffective assistance." (quoting <u>Strickland</u>, 466 U.S. at 689)).

Second, a petitioner "must show that the deficient performance prejudiced the defense." <u>Strickland</u>, 466 U.S. at 687. This means that the petitioner must demonstrate that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. Where a petitioner's conviction resulted from his own guilty plea, he must show that "there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." <u>United States v. Arteca</u>, 411 F.3d 315, 320 (2d Cir. 2005) (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).

###   b.   **Application**

Peterson fails to demonstrate that his counsel's assistance did not meet an objective standard of reasonableness and that he was prejudiced by counsel's allegedly deficient performance.

### i.   **Failure to Preserve Venue Challenge**

Peterson alleges that he was denied effective assistance of counsel -- and that his guilty plea therefore was not knowing and voluntary -- because his attorney erroneously advised him that "by pleading guilty that [Peterson] would retain [his] appellate rights to challenge venue on appeal and that by pleading guilty that this would not waive the venue issue." (Pet. Decl. at 12; see also Pet. Mot. at 9, Rider 9; Pet. Reply at 11-15).

It is well established that a § 2255 motion may not raise questions already decided on direct appeal.  United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009).  In his appeal, Peterson alleged that his guilty plea was not knowing because he had intended to preserve his right to challenge venue.  See Peterson, 288 F. App'x at 729.  The Second Circuit rejected this argument, noting that "the District Court did not mislead Peterson; it candidly admitted that it did not know whether the venue objection would be preserved or waived.  In addition, the Government made clear that Peterson's plea was not conditional . . . ."  Id.  (See also Plea Tr. 14-17, 29-32).  The Second Circuit therefore found that Peterson had access to sufficient information to render his plea knowing and voluntary.  Peterson,

-13-

288 F. App'x at 729.  Accordingly, Peterson is barred from relitigating the claim that anyone misled him to believe that he had preserved his right to challenge venue on appeal.

Even assuming that Peterson's counsel erroneously advised him that he would retain his right to challenge venue on appeal, Peterson asserts no basis on which he might have made such a challenge.  Thus, because Peterson fails to demonstrate that he suffered any prejudice, he was not denied effective assistance of counsel.

### ii.  <u>Right to Counsel</u>

Peterson also contends that his attorney pressured him to plead guilty due to economic circumstances, and that his guilty plea therefore was not voluntary.  Specifically, Peterson alleges:

> The only reason that I did plead guilty was
> that [my attorney] informed me that I could
> not afford to go to trial. . . .  At that
> point I had already paid [my attorney]
> through family and friends some Thousands of
> dollars, as set forth above.  I could at that
> time not come up with any additional funds to
> pay [him] to take this matter to trial.  At
> the time I understood that I had no choice
> but to plead guilty in an open plea or to
> represent myself at trial.

(Pet. Decl. at 3).

Peterson's allegation, however, is undermined by facts in the record.  During the plea hearing, I advised Peterson of his right to a speedy and public jury trial at which he would be presumed innocent.  (Plea Tr. 6-7).  I further advised Peterson, "[i]f there were a trial, you would have a right to be represented by an attorney, and if you could not afford one, an attorney would be provided for you free of cost."  (Id. at 7).  Peterson confirmed that he understood each and every one of these rights, and that he was waiving his rights by pleading guilty.  (Id. at 7-8).  Peterson later confirmed that nobody had offered him any inducement, threatened him, or forced him to plead guilty.  (Id. at 18).

Peterson fails to present any evidence to overcome the presumption of truth accorded to his sworn statements that he understood his right to free counsel and nobody had forced him to plead guilty.  See Blackledge v. Allison, 431 U.S. 63, 74-76 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) (noting that defendant's testimony at a plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later

-15-

self-serving and contradictory testimony as to whether a plea was
knowingly and intelligently made"). Accordingly, Peterson cannot
prevail on this basis.

### iii. **Sentencing Exposure**

Peterson further claims that his attorney misled him
about his sentencing exposure, rendering his plea unknowing and
involuntary. Peterson alleges:

> [My attorney] continually represented to me
> that my sentence would be between 18-33
> months at the inception of the case when he
> told me to turn down a plea offer of 18-33
> months and then after the plea and post plea
> agreement, he once again represented to me
> that my maximum exposure was 18-33 months and
> not the 121 month potential exposure that was
> stated [in] the post plea agreement.

(Pet. Decl. at 12; see also id. at 2-3; Pet. Mot. at Rider 8).

Where, as here, "defendant's specific claim is that
counsel has misled him as to the possible sentence which might
result from a plea of guilty, . . . the issue is whether the
defendant was aware of actual sentencing possibilities, and, if
not, whether accurate information would have made any difference
in his decision to enter a plea." Ventura v. Meachum, 957 F.2d
1048, 1058 (2d Cir. 1992) (citing cases) (internal quotation
marks omitted). Even assuming that counsel told Peterson prior

-16-

to his guilty plea that he would receive a sentence of only 18 to

33 months, the record demonstrates that Peterson was aware of his

actual sentencing possibilities by the time he entered his plea.

During the plea colloquy, Peterson confirmed that he understood

his sentence could differ from any estimates he may have received

from counsel:

> THE COURT:  Do you understand that if anyone
> has attempted to estimate what your sentence
> will be or attempted to predict what your
> sentence will be, that their estimate or
> prediction could be wrong?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Do you understand that no one,
> not your lawyer, not the government, can give
> you any assurances as to what your sentence
> will be, as I cannot decide what your
> sentence will be until we've gone through the
> process that I have discussed?
>
> THE DEFENDANT:  Yes.
>
> [. . .]
>
> THE COURT:  Do you understand that even if
> your sentence turns out to be different from
> what your attorney or anyone else has told
> you it might be, or if your sentence turns
> out to be different from what you expect, you
> will still be bound to your guilty plea and
> you will not be allowed to withdraw your plea
> of guilty?
>
> THE DEFENDANT:  Yes.

(Plea Tr. 12, 14).  I also advised Peterson that the government believed the applicable Guidelines range was 188 to 235 months' imprisonment.  (Plea Tr. 13-14).  Peterson later confirmed his understanding that the parties' outstanding disagreements regarding the applicable loss amount could affect the sentence imposed.  (Id. at 25).  Thus, because the record demonstrates that Peterson was aware of his sentencing possibilities, Peterson has not shown that he would have gone to trial but for counsel's error.  See, e.g., United States v. Concepcion, Nos. 09 Civ. 4537 (DC), 06 Cr. 743 (DC), 2009 U.S. Dist. LEXIS 117526, at *8 (S.D.N.Y. Dec. 16, 2009) (colloquy in which court informed defendant that any prediction about ultimate sentence could be wrong belied defendant's claim that he pled guilty based on counsel's promise of a particular sentence).

### iv. __Advice Regarding Pleading Guilty__

Peterson claims that he was denied effective assistance of counsel because his attorney acted out of self-interest in advising him to reject two separate plea offers that would have capped his sentence at five and six years' imprisonment, respectively.  (Pet. Mot. at Rider 8; Pet. Decl. at 2, 12; Pet.

Supp. at 2, 14-15).  He alleges that counsel gave him this advice
"to delay any plea agreement in this case in order to maximize
the amount of attorney fee [sic] that would be paid to him,
regardless of whether that adversely affected [Peterson]."  (Pet.
Decl. at 2).  Peterson asserts that he was prejudiced by
counsel's advice because he eventually entered a plea without a
written plea agreement, and he was ultimately sentenced to 120
months' imprisonment.  (Id. at 2-3).[6]

        A defendant's claim that his attorney failed to
dutifully represent him because of a fee dispute is analyzed,
like other claims of ineffective assistance, under the Strickland
framework.  United States v. O'Neil, 118 F.3d 65, 72 (2d Cir.
1997).  An attorney's failure to inform his client of the very
existence of a plea offer may constitute ineffective assistance.
See Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012) (holding that
"as a general rule, defense counsel has the duty to communicate
formal offers from the prosecution to accept a plea on terms and

---

        [6]    In fact, Peterson did enter into a written plea
agreement, dated July 19, 2005, although it does not contain a
sentencing calculation.  (See Pl. Tr. 2-3; Plea Agmt.).

conditions that may be favorable to the accused"); <u>Boria v. Keane</u>, 99 F.3d 492, 495 (2d Cir. 1996) (finding counsel ineffective where he "never even suggested" to his client that a plea had been offered because "he was certain that the petitioner would never admit his guilt or accept a plea."). Counsel's advice about whether to accept or reject a plea, however, constitutes strategic advice that should not be second-guessed by the court. <u>See, e.g.</u>, <u>Purdy v. United States</u>, 208 F.3d 41, 48 (2d Cir. 2000) (finding that attorney "acted reasonably" when he told his client about an offer "without specifically advising [defendant] to take the plea"); <u>Lake v. United States</u>, 465 F. App'x 33, 35 (2d Cir. 2012) (summary order) (counsel's "miscalculations regarding the Government's willingness to negotiate a more favorable deal or restore its initial plea offer represent, at best, strategic errors that are 'virtually unchallengeable.'" (quoting <u>Strickland</u>, 466 U.S. at 690)).

Assuming <u>arguendo</u> that Peterson was, in fact, offered two favorable plea deals and rejected them on the advice of counsel, Peterson cites no evidence to rebut the strong presumption that his counsel's actions constituted sound trial

strategy under the circumstances.[7]  See Cuevas v. Henderson, 801

F.2d 586, 589-90 (2d Cir. 1986).

Moreover, counsel's subsequent efforts to secure a more

favorable plea agreement for Peterson demonstrate counsel's

zealous and effective representation.  Specifically, the plea

agreement that Peterson ultimately executed included a Guidelines

range of 46 to 121 months' imprisonment, which was far below the

government's earlier estimate of 262 to 327 months' imprisonment

(Gov't Sen. Mem. at 38), and the low end of which was below the

---

[7]     A partly redacted email purportedly from Peterson's
attorney, dated January 1, 2009, which Peterson submitted to the
court in June 2012, is not to the contrary.  The email states, in
part:

> The big mistake was not taking the early deal
> for just pleading to the felony for doing
> insurance without the OK of the insurance
> commissioner.  That would have limited the
> time in jail to the 5 years they were
> demanding. . . . The next mistake was that we
> should have gone to [trial].

(Pet. Supp. Ex. A).  In applying the Strickland test, however,
courts must resist a natural temptation to engage in "Monday
morning quarterbacking."  Mui v. United States, 614 F.3d 50, 57
(2d Cir. 2010).  Rather, courts must "evaluate the conduct from
counsel's perspective at the time" and "must indulge a strong
presumption that counsel's conduct falls within the wide range of
reasonable professional assistance."  Strickland, 466 U.S. at
689.  Even if counsel now believes with perfect hindsight that
Peterson may have been better off had he pled guilty sooner,
Peterson fails to demonstrate that counsel's conduct was
unreasonable from counsel's perspective at the time.

maximum allegedly offered by the government in the two earlier agreements.  Thus, counsel's conduct was not unreasonable under the circumstances.

### v.   <u>Failure to Investigate</u>

Peterson alleges that his attorney was deficient for failing to conduct an adequate investigation in several respects. First, he claims that his attorney failed to seek discovery from a separate criminal case against Ian Stuart, a purported insurance broker who Peterson maintains was actually responsible for the Lloyd's fraud.  (Pet. Mot. at 6, Rider 6).  Second, Peterson claims that his attorney did not review approximately 10,000 pages of discovery because Peterson could not afford to make copies at a rate of $0.25 per page.  (Pet. Decl. at 3-9; Pet. Mot. at 5, Rider 5).  Third, Peterson asserts that his attorney did not interview several witnesses who purportedly would have exculpated him.  (Pet. Decl. at 10-11; Pet. Supp. at 1, 4-10).  As a result of this failure to investigate, Peterson says, counsel was unable to advise him as to the relative strengths and weaknesses of the government's case (Pet. Decl. at 4) and he was not in a position to participate in a <u>Fatico</u> hearing regarding the applicable loss amount (Pet. Mot. at Rider 6).

To successfully assert an ineffective assistance of counsel claim based on a failure to investigate, "a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." Taylor v. Poole, No. 07 Civ. 6318 (RJH) (GWG), 2009 U.S. Dist. LEXIS 76316, at *39-41 (S.D.N.Y. Aug. 27, 2009) (collecting cases), adopted by 2011 U.S. Dist. LEXIS 96061 (S.D.N.Y. Aug. 24, 2011).  In particular, where a petitioner claims that his attorney failed to investigate potential witnesses, "the petitioner must demonstrate that the witnesses would have testified at trial and explain the expected nature of the witnesses' testimony." Id. at *42 (collecting cases). Courts have rejected ineffective assistance claims based on failure to investigate potential witnesses where the petitioner failed to provide affidavits from the witnesses stating what testimony they would have offered.  See, e.g., Eisemann v. Herbert, 401 F.3d 102, 108-09 (2d Cir. 2005) (finding petitioner's assertion that witness would have provided exculpatory testimony was speculation where record contained no evidence to suggest that witness possessed such information); McCarthy v. United States, Nos. 02 Civ. 9082 (LAK) (GWG), 98 Cr. 1469 (BDP), 2004 U.S. Dist. LEXIS 705, at *52 (S.D.N.Y. Jan. 23,

2004) (denying ineffective assistance claim because petitioner failed to produce affidavits from proposed witnesses showing that they would have testified at trial).  Moreover, while failure to conduct an adequate pre-trial investigation may serve as the basis for a claim of ineffective assistance of counsel, the court is mindful that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  <u>Strickland</u>, 466 U.S. at 690-91.

Here, the record shows that Peterson's counsel did seek discovery of materials from the government's investigation of Ian Stuart, and that his request was denied.  (<u>See</u> 6/30/2006 Tr. 16).

Further, counsel's submissions to the court suggest that he did review discovery and was familiar with the material provided by the government.  Indeed, in his lengthy sentencing memorandum and during the sentencing hearing, Peterson's attorney recounted the same history and advanced the same arguments that Peterson now faults him for not making, citing to letters and emails received from the government in discovery.  (<u>See</u> Pet. Sen. Mem.; Sen. Tr. 13-18, 30-34).

Moreover, only one of the purported witnesses Peterson identifies has submitted an affidavit, and she confirms that

-24-

Peterson's counsel did interview her.  (See Garton Decl. ¶ 11 ("I was interviewed via telephone by [Peterson's] attorney . . . about the matters set forth in this Declaration.")).  None of the other witnesses identified by Peterson provided any statement supporting Peterson's claims.  At least three of the witnesses -- Ian Stuart, Jon Heim, and Leon Toppin -- are alleged to have been involved in the fraud, and Peterson offers no indication that they would have waived their Fifth Amendment right not to incriminate themselves to testify on his behalf.  See Greene v. Browne, No. 06 Civ. 5532 (LAP) (GWG), 2007 U.S. Dist. LEXIS 40038, at *42 (S.D.N.Y. June 4, 2007) (where petitioner offered no evidence that witness would have been willing to waive Fifth Amendment privilege and testify, petitioner failed to show prejudice from counsel's failure to subpoena witness).

    Peterson offers no proof, beyond his own self-serving and conclusory allegations, that his attorney failed to review discovery or interview witnesses.  This is plainly insufficient to establish ineffective assistance.

    Even assuming that counsel did not review all of the discovery produced or contact the other identified witnesses, Peterson fails to demonstrate both that counsel's decision to limit his investigation was not a reasonable strategic choice and

-25-

that, but for counsel's errors, "he would not have pled guilty
and would have proceeded to trial." <u>Arteca</u>, 411 F.3d at 320
(citing <u>Hill</u>, 474 U.S. at 59).  Indeed, Peterson admitted his
guilt by pleading guilty, and he does not now claim that he is
innocent.  Accordingly, Peterson cannot show that his attorney's
investigation was constitutionally deficient.  <u>See, e.g.</u>, <u>United
States v. Carraballo</u>, No. S12 98 Cr. 1316 (RWS), 2001 U.S. Dist.
LEXIS 1121, at *18 (S.D.N.Y. Feb. 8, 2001) ("Even if [petitioner]
could show that [his attorney] did not undertake any
investigation, and that his decision 'fell below an objective
standard of reasonableness' under the circumstances, he would
still have not met his burden to show prejudice, namely that if
[the attorney] had conducted a thorough investigation, he would
have discovered enough exculpatory evidence to dissuade
[petitioner] from pleading guilty.").

### vi.  <u>Waiver of Fatico Hearing</u>

Peterson alleges that counsel's decision to waive a
hearing pursuant to <u>United States v. Fatico</u>, 579 F.2d 707 (2d
Cir. 1978), was deficient because it deprived him of an
opportunity to present evidence in his favor regarding the
applicable loss amount.  (Pet. Mot. at 5, Rider 6).

An attorney's decision to forego a <u>Fatico</u> hearing can be seen as a reasonable, strategic decision.  <u>See United States v. Lee</u>, 818 F.2d 1052, 1056 (2d Cir. 1987) (upholding counsel's decision to decline a <u>Fatico</u> hearing "as a matter of strategy"); <u>see also</u> <u>Schwamborn v. United States</u>, 492 F. Supp. 2d 155, 163 (E.D.N.Y. 2007) (collecting cases supporting the proposition that foregoing a <u>Fatico</u> hearing is a strategic decision).  Moreover, a district court "is under no duty to conduct a full-blown evidentiary hearing in each instance where information in a presentence report is challenged.  Nor does the convicted defendant have an absolute right to demand that kind of hearing." <u>United States v. Lee</u>, 818 F.2d 1052, 1056 (2d Cir. 1987). Moreover, in my experience, it usually does not help a defendant for the Court to see the evidence of the defendant's wrongdoing.

In this case, counsel was not ineffective for waiving a <u>Fatico</u> hearing to determine the applicable loss amount.  Counsel decided not to pursue a <u>Fatico</u> hearing after months of negotiations with the government culminating in a Sentencing Stipulation that included several favorable terms for Peterson. Further, although counsel did not insist on a <u>Fatico</u> hearing regarding the loss amount, he still argued vehemently that the proposed victim enhancement and Criminal History Category were

-27-

inappropriate.  (See Sen. Tr. 12-20; Pet. Supp. Sen. Mem.).  The decision to forego the Fatico hearing was a strategic one that falls within the range of reasonable professional assistance. See, e.g., Lee, 818 F.2d at 1056.

Moreover, Peterson has not demonstrated, or even alleged, that he would not have pled guilty had counsel proceeded with a Fatico hearing, and therefore, he has not satisfied the second prong of the Strickland test.

### vii.  Failure to Challenge Victim Enhancement

Peterson alleges that counsel provided ineffective assistance because he did not challenge the application of a six-level victim enhancement pursuant to section 2B1.1(b)(2)(C) of the U.S. Sentencing Guidelines Manual.  (Pet. Reply at 7-10). Relying on United States v. Booker, 543 U.S. 220 (2005) and Apprendi v. New Jersey, 530 U.S. 466 (2000), Peterson argues that applying the victim enhancement was unconstitutional because it was based on the court's findings by a preponderance of the evidence, rather than findings by a jury beyond a reasonable doubt.  (Id. at 7-10).

As an initial matter, I note that Peterson's counsel did raise this argument in his sentencing memoranda, and I

rejected it.  (See Pet. Supp. Sen. Mem. at 3-4; Pet. Sen. Mem. at 4; Sen. Tr. at 29).

In any event, Peterson's claim is misplaced.  In Apprendi, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490 (emphasis added).  It is well settled that a district court may find facts relevant to sentencing by a preponderance of the evidence, even where, as here, the defendant disputes those facts.  See United States v. Coppola, 671 F.3d 220, 251 n.29 (2d Cir. 2012) (noting that sentencing judge may even consider acquitted conduct if supported by a preponderance of the evidence); see also United States v. Brown, 514 F.3d 256, 269 (2d Cir. 2008) ("Judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives Booker." (internal quotation marks omitted)).

Because Peterson's sentence did not exceed the maximum statutory penalties established under 18 U.S.C. §§ 1033(e)(1)(A) and 1343, it did not violate the constitutional rules articulated in Apprendi or Booker.

-29-

### viii.      **Failure to Challenge Indictment as Unconstitutional**

Finally, Peterson alleges that his attorney was ineffective for failing to argue that the criminal statutes under which he was convicted, as applied to his case, violate the Tenth Amendment.  (<u>See</u> Pet. Second Mot.).  Peterson appears to argue that the statutes are reverse preempted by the McCarran-Ferguson Act, ch. 20, 59 Stat. 33 (1945) (codified as amended at 15 U.S.C. §§ 1011-1015 (2006)), insofar as they criminalize his insurance-related activities.  (<u>See id.</u>; Pet. Supp. at 3-4, 16).  The McCarran-Ferguson Act declares that it is "in the public interest" for the states to regulate and tax "the business of insurance."  15 U.S.C. § 1011.  To that end, the Act provides that federal legislation shall not be "construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating" that industry unless it "specifically relates to the business of insurance."  Id. § 1012(b).  Accordingly, a state law regulating "the business of insurance" precludes a federal statute from redressing conduct "if the federal measure does not specifically relate to the business of insurance, and would invalidate, impair, or supersede the State's law."  <u>Humana Inc. v. Forsyth</u>, 525 U.S. 299, 307 (1999) (internal quotation marks

omitted).  Nevertheless, the Act does not preclude the application of a federal statute "[w]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime."  Id. at 309.

As applied in this case, the wire fraud statute, 18 U.S.C. § 1343, and the statute criminalizing engaging in the business of insurance after having been convicted of a felony involving a breach of trust, 18 U.S.C. § 1033, do not directly conflict with, frustrate, or interfere with any declared state policy or administrative regime.  On the contrary, the application of the criminal statutes here would enhance the state's interest in prohibiting insurance fraud.  Numerous courts have expressly held that the McCarran-Ferguson Act does not preempt the prosecution of insurance company executives for violations of the federal mail and wire fraud statutes.  See e.g., United States v. Brennan, No. CR-95-00420 (CPS), 1997 U.S. Dist. LEXIS 24313, at *74-75 (E.D.N.Y. Mar. 19, 1997) (concluding that the Act did not preempt the use of the mail fraud statute where convictions rested on a fiduciary duty theory that was consistent with state law); United States v. Blumeyer, 114 F.3d 758, 768 (8th Cir. 1997) ("[T]he criminal prosecution of an

-31-

insurance company officer for fraud does not 'invalidate, impair, or supersede any law' enacted by the state" (citation omitted)); United States v. Cavin, 39 F.3d 1299, 1305 (5th Cir. 1994) (finding government's "interest in the [bank, mail, and wire] fraud prosecution is completely compatible with the state's regulatory interests"); United States v. Sylvanus, 192 F.2d 96, 108 (7th Cir. 1951) ("[T]he McCarran Act does not immunize an insurance company whose operations are subject to state regulation from prosecution for violation of the mail fraud statute . . . ."); see also United States v. Redcorn, 528 F.3d 727, 737 (10th Cir. 2008) ("[B]ecause in the face of a federal criminal prosecution a state retains parallel jurisdiction to prosecute offenses under its own laws, we are skeptical that a federal criminal statute would ever be preempted by McCarran-Ferguson unless it were to forbid something affirmatively required by state insurance law.").  Similarly, in United States v. Turner, 301 F.3d 541, 546-48 (7th Cir. 2002), the court held that a conviction pursuant to 18 U.S.C. § 1033 for a crime affecting the business of insurance does not violate the McCarran-Ferguson Act because insurance affects interstate commerce.

Because Peterson's constitutional argument lacks merit, his counsel was not ineffective for failing to raise it.

### 2.  **Resentencing**

Peterson seeks a reduction in his term of imprisonment based on a 2010 amendment to section 4A1.1(e) of the U.S. Sentencing Guidelines Manual that eliminates "recency" points from criminal history calculations.  (Pet. Reply at 16-21).  <u>See</u> U.S. Sentencing Guidelines Manual ("U.S.S.G.") app. C, Amendment 742 (2010).

The amendment, which became effective on November 1, 2010, does not affect Peterson's sentence because it does not apply retroactively.  <u>See</u> U.S.S.G. § 1B1.10(c) (excluding Amendment 742 from list of amendments that should be applied retroactively); <u>United States v. Mitchell</u>, 402 F. App'x 560, 562 (2d Cir. 2010) (summary order) (holding that Amendment 742 should not be applied retroactively); <u>see also</u> 18 U.S.C. § 3553(a)(4)(A)(ii) (providing that sentencing court shall consider Guidelines that "are in effect on the date the defendant is sentenced"); U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").  Because Peterson was sentenced on February 28, 2007, more than three years before the amendment became

effective, he is not entitled to a sentence reduction.

## CONCLUSION

For the foregoing reasons, Peterson's motion pursuant to 28 U.S.C. § 2255 is denied.  Peterson's motion for an evidentiary hearing is also denied, as he has not established "a plausible claim of ineffective assistance of counsel."  Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (citation and internal quotation marks omitted); see also 28 U.S.C. § 2255(b).

Because Peterson has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability.  See 28 U.S.C. § 2255.  I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision and order would not be taken in good faith.  The Clerk of the Court shall close this case.

SO ORDERED.

Dated:      New York, New York
            September 28, 2012

DENNY CHIN
United States Circuit Judge
Sitting by Designation

-34-